**This version includes the errata dated 18Dec06-e**

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-468

ROBERT L. MCGEE, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 26, 2006                                    Decided October 13, 2006   )

*Barbara J. Cook*, of Cincinnati, Ohio, for the appellant.

*Leslie C. Rogall*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and SCHOELEN, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court. SCHOELEN, *Judge*, filed an opinion concurring in part and dissenting in part.

HAGEL, *Judge*: Before the Court is Robert L. McGee's appeal from a February 12, 2004, Board of Veterans' Appeals (Board) decision in which the Board denied him an effective date earlier than April 15, 1999, for a grant of service connection for sarcoidosis with chronic obstructive pulmonary disease. The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the February 2004 Board decision. Because, for reasons provided herein, we hold that 10 U.S.C. § 1218 is not an "applicable provision[] of law" within the meaning of 38 U.S.C. § 7104(a), we will affirm the decision on appeal.

## I. FACTS

Mr. McGee served on active duty in the U.S. Marine Corps from May 1968 to September

1970. In August 1970, he was referred to a physical evaluation board with a diagnosis of "sarcoidosis, associated with a severe restrictive ventilatory defect." Record (R.) at 30. The physical evaluation board found him unfit to perform his duties because of physical disability. In September 1970, he was separated from service and placed on the temporary disability retired list.

In April 1999, Mr. McGee sent VA a letter in which he asserted that he was service-connected for a lung disability–rated 30% disabling–and that his lungs were bothering him again. R. at 56. In February 2001, a VA regional office awarded him service connection for sarcoidosis and assigned that condition a 30% disability rating, effective July 17, 2000. The regional office increased that disability rating to 60% in an August 2001 decision, and assigned Mr. McGee a rating of total disability based on individual unemployability. Mr. McGee appealed that decision on the basis that he is entitled to an earlier effective date for his service-connected sarcoidosis. In June 2002, the regional office informed him that the February 2001 regional office decision was the product of clear and unmistakable error and that April 15, 1999, was the proper effective date for the award of service connection for sarcoidosis. *See* R. at 215-16. That decision was premised on the fact that the claim for an increased disability rating was filed within one year of the mailing to Mr. McGee of a VA claim form in response to his April 1999 letter. R. at 216. Mr. McGee appealed that decision on the basis that he is entitled to an effective date earlier than April 15, 1999. That issue reached the Board and was the subject of the February 2004 decision now on appeal.

In that decision, the Board denied Mr. McGee an effective date prior to April 15, 1999, for service connection for sarcoidosis. In so doing, the Board concluded that "there is no evidence of VA receipt of a written claim, formal or informal, for service connection for sarcoidosis . . . until April 15, 1999." R. at 4.

On appeal, Mr. McGee raises a single argument–that "[t]he Board erred in failing to consider or apply 10 U.S.C. § 1218." Appellant's Brief (Br.) at 1. In particular, he contends that that statute operates to create a presumption that he filed a claim for VA benefits for his lung condition "when he was released from active duty in 1970." *Id.* at 3. In support of that argument, he asserts that "the benefit of the doubt rule mandates that the VA find . . . that [he] signed an application for benefits." *Id.* at 6. He asks the Court to vacate the decision on appeal and to grant him an earlier effective date or to remand the case to the Board for readjudication under 10 U.S.C. § 1218. *Id.* at 7.

In response, the Secretary asserts that the Court should not consider Mr. McGee's argument

because he never raised it before VA. *See* Secretary's Br. at 6-10. If the Court should address Mr. McGee's argument, the Secretary contends that the Board had no obligation to consider10 U.S.C. § 1218, because that statute pertains to the propriety of military discharges, and the proper forum for considering an alleged violation of that statute is the U.S. Court of Federal Claims. Thus, he argues that VA "has no . . . responsibility to apply the laws regarding military discharges when determining the effective date of a claim." *Id.* at 13.

## II. ANALYSIS

A Board determination of the proper effective date is a finding of fact. *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). The Court reviews Board factfinding under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). Under 38 U.S.C. § 5110, "[u]nless specifically provided otherwise . . . , the effective date of an award based on an original claim . . . or a claim for increase[] of compensation . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." *See* 38 C.F.R. § 3.400 (2005). In addition, in rendering its decision, pursuant to 38 U.S.C. § 7104, the Board is obligated to consider "applicable provisions of law and regulation" and include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. 38 U.S.C. § 7104(a), (d); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

Here, Mr. McGee argues that the Board violated section 7104(a) by failing to consider and apply 10 U.S.C. § 1218, which he contends is an applicable law. *See* Appellant's Br. at 7. That statue provides, in pertinent part, as follows:

> (a) A member of an armed force may not be discharged or released from active duty because of physical disability until he—
>
>> (1) has made a claim for compensation, pension, or hospitalization, to be filed with the Department of Veterans Affairs, or has refused to make such a claim; or
>> (2) has signed a statement that his right to make such a claim has been explained to him, or has refused to sign such a statement.

38 U.S.C. § 1218(a).[1]  As explained below, we find Mr. McGee's contention unpersuasive and conclude that 10 U.S.C. § 1218 is not an applicable provision of law within the meaning of 38 U.S.C. § 7104(a) and that, as a consequence, the Board did not err in failing to consider that provision of law.

Section 1218, by its terms, is directed towards military officials and presents certain requirements that must be satisfied prior to a servicemember's discharge from the U.S. Armed Forces–it does not place any obligation upon the Secretary of Veterans Affairs.  A violation of that provision of law might result in an improper discharge from the military and subsequent entitlement to military pay, which could be properly challenged by the filing of a timely action in the U.S. Court of Federal Claims.[2]  *See Quailes v. United States*, 25 Cl. Ct. 659, 662 (1992) (noting a plaintiff's argument that his separation from service was improper because, among other things, the separation violated 10 U.S.C. § 1218 ); *see also Barney v. United States*, 57 Fed. Cl. 76, 79 (2003) (noting a plaintiff's argument that he was entitled to "disability retirement" pursuant to 10 U.S.C. § 1218 because he was wrongfully discharged from service).  The Secretary is correct that this Court is not the proper forum for such a challenge.  *See Denton v. Schlesinger*, 605 F.2d 484, 486-88 (9th Cir. 1979) (holding that the U.S. Court of Claims was the proper forum for a suit by junior officers in the Navy and Marine Corps who sought money damages and injunctive relief for their allegedly wrongful discharges); *see also* Secretary's Br. at 13-14.  In our view, 10 U.S.C. § 1218 imposes no obligation upon the Secretary of Veterans Affairs and fails to provide for any remedy in the veterans-benefits context.[3]

Because we hold that 10 U.S.C. § 1218 is inapplicable in this context, it follows that Mr.

---

[1] The statute has remained unchanged substantively since Mr. McGee's separation from service in 1970.

[2] The U.S. Court of Federal Claims was called the U.S. Court of Claims before its name was changed in 1992.

[3] We have considered the applicability of the Federal Circuit's decision in *Bates v. Nicholson*, 398 F.3d 1355 (Fed. Cir. 2004), and find it to be inapposite here. *Bates* concerned a legal interpretation of 38 U.S.C. § 511(a) and 38 U.S.C. § 7104(a) for the purpose of determining the Board's jurisdiction, whereas this case concerns only the Board's compliance, or lack thereof, with the last sentence in 38 U.S.C. § 7104(a), which requires that "[d]ecisions of the Board . . . be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation."  That distinction is far from superficial, as the questions at issue in both cases are very different. *Bates* involved a determination as to whether the Board possesses jurisdiction over an attorney's challenge to the termination by the Secretary of the attorney's accreditation to represent claimants before VA. 398 F.3d at 1358-59.  This case involves a determination as to whether the Board complied with its statutory obligation in light of its failure to consider a particular law not found within title 38 of the U.S. Code.

McGee's argument that that statute coupled with the benefit of the doubt doctrine "mandates that the VA find . . . that [he] signed an application for benefits" is without merit. Appellant's Br. at 6. Moreover, even were we to assume for argument's sake that 10 U.S.C. § 1218 does apply here, Mr. McGee's argument would remain unavailing. That is so because the statute itself does not require the filing of a claim for VA benefits. Instead, the statute merely provides that a servicemember "may not be discharged or released from active duty because of physical disability" unless *one* of the following *four conditions* has occurred: (1) The servicemember has "made a claim" for VA benefits; (2) the servicemember has "refused to make such a claim"; (3) the servicemember "has signed a statement that his right to make such a claim has been explained to him"; or (4) the servicemember has "refus[ed] to sign such a statement." 10 U.S.C. § 1218 (a)(1), (2). Thus, assuming that Mr. McGee's discharge conformed to the requirements of the statute, the scenario that Mr. McGee argues *must* be presumed to have occurred is but one of four possible conditions, only one of which must necessarily have occurred. In other words, the terms of the statute could have been satisfied without Mr. McGee having filed a claim for benefits with VA.[4]

Because Mr. McGee's lone argument–that the terms of 10 U.S.C. § 1218 compel a conclusion that he filed a claim for VA benefits prior to his discharge from active duty in 1970–is without merit, we cannot conclude that the Board erred in determining that "there is no evidence of VA receipt of a written claim, formal or informal, for service connection for sarcoidosis . . . until April 15, 1999," and assigning that date as the effective date for his award of service connection for sarcoidosis. R. at 4; *see Gilbert*, 1 Vet.App. at 52.

### III. CONCLUSION

---

[4] Our dissenting colleague believes that "[i]n a case where a claimant who has been discharged from the military because of a physical disability alleges that he filed an application for VA benefits prior to his discharge, and there is no evidence of such an application, 10 U.S.C. § 1218 "is relevant." *Post* at 9. Although, as explained above, we disagree with that legal conclusion, even assuming for argument's sake that it is correct, Mr. McGee has not asserted that he actually filed a claim for VA benefits before he was removed from the temporary disability retired list in 1976. In fact, at a Board hearing in September 2003 he asserted that he was not advised before his removal from the temporary disability retired list that he could file a claim for VA benefits. *See* R. at 281 ("When I left out, they didn't tell me what to do."). Specifically, when asked whether he had "come into contact with anyone who could have advised [him] of a need to file a claim for compensation benefits," he replied "I didn't come into contact with anybody." R. at 281. When asked whether he was "briefed . . . as to the necessity to file a claim with [VA]," he responded "[n]o way." R. at 284. Before the Court, his argument does not contradict his testimony before the Board–his current argument, as we understand it, is that even if he failed to file an actual claim, the law creates a presumption that he did. *See* Appellant's Br. at 3. Moreover, even if Mr. McGee's argument were that he actually filed a claim prior to leaving service, success on that argument would depend on factual determinations and not on the application of 10 U.S.C. § 1218.

On consideration of the foregoing, the February 12, 2004, Board decision is AFFIRMED.

SCHOELEN: *Judge*, concurring in part and dissenting in part: I fully concur in the majority's decision that the benefit of the doubt does not operate as a presumption to establish that the appellant filed a claim for VA benefits prior to his release from active duty in 1970. Appellant's Br. at 5-6. Mr. McGee's primary argument, as set forth in his briefs, is that pursuant to 10 U.S.C. § 1218, Navy officials, in keeping with the presumption of regularity, ensured that he either applied for VA benefits prior to his release from active duty or refused to do so, and that in the absence of documentary evidence as to which of the options occurred, the benefit of the doubt dictates that he applied for VA benefits prior to his release from active duty because this would be the most favorable option for Mr. McGee. Appellant's Br. at 5-6. In effect, Mr. McGee treats the benefit of the doubt as an evidentiary presumption, which he argues "excuses the lack of documentary evidence" to support his assertion that he applied for VA benefits in 1970 prior to his release from active duty. Appellant's Br. at 5; Appellant's Reply Br. at 4-5.

A presumption involves an assumption that a fact exists, based on the known or proven existence of some other fact or group of facts. *See* BLACK'S LAW DICTIONARY 1203 (7th ed. 1999). However, this Court and the U.S. Court of Appeals for the Federal Circuit have held that presumptions are not evidence. *Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998) (citing 1 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 301.10 at 156-57 & nn. 1-3 (4th ed. 1996) ("It is now universally recognized that a presumption is a rule of law for the handling of evidence, not a species of evidence.") and Ronald J. Allen, *Presumptions, Inferences, and Burden of Proof in Federal Civil Actions–An Anatomy of Unnecessary Ambiguity and a Proposal for Reform*, 72 N.W.U.L.REV. 892, 903 (1982) ("Presumptions are not evidence– they are labels applied to decisions about evidentiary matters.")); *see also Kent v. Nicholson*, 20 Vet.App. 1, 8 (2006) (stating that although presumptions are rules of law for handling evidence, they are not themselves considered evidence). Even though a presumption may fill in an evidentiary gap that would ordinarily have to be filled by more evidence, when contrary evidence is submitted to rebut the presumption, unlike true evidence, the presumption disappears. *Routen*, 142 F.3d at 1440 (citing 1 WEINSTEIN'S FEDERAL EVIDENCE § 301.02[1], at 301-07 (2d ed. 1997); and 2 MCCORMICK ON EVIDENCE § 342, at 450 (John W. Strong ed., 4th ed. 1992)).

The fundamental flaw with Mr. McGee's argument is that the benefit of the doubt is not a

presumption. To the contrary, the benefit of the doubt is the unique standard of proof that applies in decisions on claims for veterans benefits. As this Court recognized in *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990), the term "standard of proof" refers to the "evidentiary threshold which a litigant must achieve in order to prevail." Within the American judicial system, the various forms of standards of proof cover a wide spectrum ranging from the most stringent "beyond a reasonable doubt" standard in a criminal case to the less restrictive "by a fair preponderance of the evidence standard" in a civil case. Within the VA adjudicatory system, Congress mandated that VA use the least restrictive "benefit of the doubt" standard when deciding claims for veterans benefits. *Id*. at 53-54.

Pursuant to 38 U.S.C. § 5107(b), a veteran is entitled to the "benefit of the doubt" when there is an "approximate balance of positive and negative evidence." *Gilbert*, 1 Vet.App. at 53. As this Court recognized in *Gilbert*, "[t]his unique standard of proof is in keeping with the high esteem in which our nation holds those who have served in the Armed Services. It is in recognition of our debt to our veterans that society has . . . taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an 'approximate balance of positive and negative evidence.'" *Id.* at 54. Because the benefit of the doubt is a standard of proof, it applies when all of the evidence is assembled, and the Board makes its determination whether the evidence supports the claim or is in relative equipoise (the veteran prevailing in either event), or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. *Id.* at 55; *see also* 38 C.F.R. § 3.102 (stating that "[w]hen after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service connection, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant").

Thus, contrary to Mr. McGee's argument, the benefit of the doubt does not relieve him of the burden of having to produce actual evidence to support his contention that he applied for service-connected benefits prior to April 1999. Further, the benefit of the doubt, in conjunction with section 1218, does not create evidence otherwise missing from the record to be weighed in Mr. McGee's favor when the Board determines whether the evidence is in equipoise. Accordingly, without actual documentary evidence to indicate that Mr. McGee applied for VA benefits prior to his release from active duty, the Board may not assume that he exercised this option under section 1218.

While I agree with the majority regarding Mr. McGee's benefit of the doubt argument, I

respectfully differ with the majority's view that the Board does not have a duty to consider 10 U.S.C. § 1218. The majority concludes that section 1218 is not an "applicable law" within the meaning of 38 U.S.C. § 7104(a) because it imposes "no obligation upon the Secretary and fails to provide any remedy in the veterans-benefits context." Section 7104(a) provides, in pertinent part, that "[d]ecisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulations." This Court has long held that this statutory provision requires the Board to consider and discuss in its decision, all "*potentially applicable*" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (emphasis added); *see also Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992).

The majority cites no authority for its narrow interpretation of section 7104(a). There is no discussion of how the plain language of the statute supports such a construction. The statute does not contain restrictive criteria on its scope. A fundamental canon of statutory construction is that when interpreting a statute, the words of a statute are given "their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000); *Smith v. United States*, 508 U.S. 223 (1993) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979) (stating that words [in a statute], unless otherwise defined, will be interpreted as taking their ordinary, contemporary, common meaning.")). The word "applicable" is defined as "that can be applied; appropriate." WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH 67 (3rd College ed. 1988). A synonym for "applicable" is "relevant." *Id*. "Relevant," is defined as "bearing upon or relating to the matter in hand; pertinent; to the point." *Id*. at 1133. A statute can be relevant and therefore applicable even if it does not impose a duty on the Secretary or provide a remedy for its violation.

Here, 10 U.S.C. § 1218, on its face, imposes a duty on the Armed Services that is relevant to veterans benefits adjudication. Prior to a servicemember's discharge or release from active duty because of a physical disability, the Armed Services must ensure that the servicemember has either made a claim for VA benefits or declined to make such a claim. As in the case before the Court, a key factual question that must be resolved, in many earlier-effective-date cases, involves a determination of the date the claimant filed an application for VA benefits. The resolution of this issue turns upon the available documentary evidence. In a case where a claimant who has been

discharged from the military because of a physical disability alleges that he filed an application for VA benefits prior to his release or discharge from active duty, and there is no evidence of such an application, 10 U.S.C. § 1218 is relevant because it indicates that pertinent records may exist in the veteran's service personnel file to support his claim that an application for VA benefits was filed. Thus, the statute is an "applicable law" within the meaning of section 7104(a) because it points to a source of evidence that may support a veteran's claim for VA benefits. Additionally, although section 1218 does not impose a duty on the Secretary, it has a potential effect on his duty to assist a claimant in developing the facts pertinent to his claim. *See* 38 U.S.C. § 5103A.

As this Court has recognized, there is a continuing obligation upon VA to assist veterans in developing the facts pertinent to their claims throughout the entire administrative adjudication. *See Dingess v. Nicholson*, 19 Vet.App. 473 (2006); *see also Murincsak v. Derwinski*, 2 Vet. App. 363 (1992). Under 38 U.S.C. § 5103A(b), VA's duty to assist includes making "reasonable efforts to obtain relevant records," so long as the claimant "adequately identifies" those records to the Secretary and authorizes the Secretary to obtain them. 38 U.S.C. § 5103A(b)(1); *Loving v. Nicholson,* 19 Vet.App. 96, 101-02 (2005). Relevant records could include, but are not limited to, military records, including service medical and personnel records; medical and other records from VA medical facilities; and records from other Federal agencies. *See* 38 U.S.C. § 5103A(b); 38 C.F.R. § 3.159(c)(2) (2005). VA may cease its efforts to obtain records from a Federal department or agency if it concludes that the records sought do not exist or that further efforts to obtain those records would be futile. *See* 38 U.S.C. § 5103A(b); 38 C.F.R. § 3.159(c)(2). Cases in which VA may conclude that no further efforts are required include those in which the Federal department or agency advises VA that the requested records do not exist, or that the custodian does not have them. *Id.* VA is then required to notify a claimant that it made reasonable efforts to obtain his or her Federal records but was either unable to obtain them or it was reasonably certain that any additional efforts to obtain such records would be futile. *See* 38 C.F.R.§ 3.159(e).

Whether the Secretary's duty to assist a claimant has been triggered in obtaining relevant service personnel records when a veteran was discharged from the military because of a disability involves certain factual determinations that should be made by the Board in the first instance. The majority does not discuss the potential effect of 10 U.S.C. § 1218 on the Secretary's statutory duty to assist. This may be explained by the majority's view that Mr. McGee made a single argument in

his appeal–that the Board erred in failing to consider 10 U.S.C. § 1218 and that, 10 U.S.C. § 1218, in conjunction with the benefit of the doubt, compels a conclusion that Mr. McGee filed a claim for VA benefits prior to his release from active duty in 1970. This is an apt description of the argument made in the appellant's briefs. That argument was founded on Mr. McGee's assertion that other evidence in the record did not contradict his allegation that he had filed an application for VA benefits in 1970 prior to his release from active duty. *See* Appellant's Br. at 6-7.

However, on the eve of oral argument, the Secretary sought permission to supplement the record on appeal with Mr. McGee's 1978 application for educational benefits, in which the appellant indicated that he had not filed any prior claim for VA benefits. In light of this new document being added to the record, Mr. McGee refined his argument. In his written response to the supplemental record on appeal, Mr. McGee stated that he was withdrawing his argument for reversal, and was seeking a remand, which he indicated was the appropriate relief because the evidence of record no longer contained only one permissible view of the evidence and that a remand was appropriate for the Board to weigh all of the evidence and to determine the need for further development of the evidence in accordance with VA's duty to assist.

At oral argument, Mr. McGee contended that the Board's failure to consider 10 U.S.C. § 1218 led to its error in determining whether Mr. McGee filed an application for VA benefits prior to April 1999 without a fully developed record. Further, he argued that the Board's consideration of section 1218 would require it to remand the case to the RO with instructions that the RO seek to obtain, inter alia, the appellant's service personnel file. He stated that it was only after such development occurred that the Board would be in a position to decide whether the appellant had filed a claim for service connection for his lung disorder prior to April 1999. I agree and note that this part of the appellant's argument illustrates why 10 U.S.C. § 1218 should be considered an applicable law within the meaning of 38 U.S.C. § 7104(a).

In this case, the record does not contain an application for service connection for a lung disability filed by the appellant prior to April 15, 1999. Additionally, there is mixed evidence as to whether the appellant alleges that he filed a claim for VA benefits prior to April 1999. On the one hand, there is the appellant's 2000 formal application for service connection for a lung disability in which he indicated that he had previously applied for VA benefits. R. at 73. On the other hand, there is the 1978 application for educational benefits in which he indicated that he had not previously

applied for VA benefits.  Mr. McGee asserts in his briefs that he filed a claim for VA benefits *prior* to the date that he was discharged from active duty in 1970, a factor that would be key in triggering any duty by VA to obtain his service personnel records.  However, it is unclear from the evidence whether he actually alleged that he filed such an application.  All of these are factual issues that need to be adjudicated by the Board, in the first instance, as part of its consideration of 10 U.S.C. § 1218 and the statute's potential effect on the Secretary's duty to assist.

Accordingly, I respectfully dissent from the Court's decision that 10 U.S.C. § 1218 is not an applicable provision within the meaning of 38 U.S.C. § 7104(a).